**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Joseph L. Lamont and Rita
Lamont

    v.                                 Civil No. 14-cv-036-LM
                                        Opinion No. 2014 DNH 062

Furniture North, LLC d/b/a
Bob's Discount Furniture


**O R D E R**

Joseph L. Lamont ("Mr. Lamont") and Rita Lamont ("Mrs. Lamont") (collectively "the Lamonts") brought suit against Furniture North, LLC d/b/a Bob's Discount Furniture ("BDF") claiming that it violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by making automated calls to their cellular telephones without their express consent.  The Lamonts also claim that BDF violated the New Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. ("RSA") § 358-A, by misrepresenting when it would deliver furniture that they had purchased, by misrepresenting that this furniture would arrive fully assembled, and by not delivering a necessary component of one of the pieces of furniture.  This matter is before the court upon a motion to dismiss filed by BDF.  For the reasons that follow, the motion to dismiss is granted in part.

## Standard of Review

Under Rule 12(b)(6), the court must dismiss a complaint upon motion of the opposing party unless the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." González-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 247 (1st Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).  The objective of the court's inquiry is not to determine "whether a plaintiff will ultimately prevail[,] but whether the claimant is entitled to offer evidence to support [its] claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  When assessing a complaint under Rule 12(b)(6), the court must "accept[] as true all well-pled facts in the complaint and draw[] all reasonable inferences in favor of [the] plaintiff[]." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (citing SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (en banc)).  In addition to the complaint itself, "[t]he court can consider, [among other things], . . . concessions in the complainant's response to the motion to dismiss." Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005).

**Background**

Except where otherwise indicated, the following facts are
drawn from the Lamonts' complaint and are taken to be true for
the limited purpose of ruling on the motion before the court.
On December 7, 2013, Mrs. Lamont purchased an end table, a
bookcase, and two bunk beds from BDF.  BDF advised Mrs. Lamont
that the items would be delivered fully assembled and would
arrive during a three-hour window of time on the day of
delivery.  BDF also informed Mrs. Lamont that the Lamonts would
be advised of the delivery ahead of time.  The Lamonts have
conceded that Mrs. Lamont gave BDF both her own cellular
telephone number and her husband's.

On December 12, BDF delivered the end table, bookcase, and
a partial bunk bed to the Lamonts' residence.  The bookcase was
damaged and taken back by BDF.  BDF left the pieces of the bunk
bed on the Lamonts' bedroom floor.  On December 19, BDF brought
another bookcase and the remainder of the bunk bed to the
Lamonts' home.  The Lamonts later discovered that the bookcase
was not fully assembled.

A second bunk bed was scheduled to be delivered at the
Lamonts' home on January 2, 2014, between 1:50 p.m. and 4:50
p.m.  At approximately 1:00 p.m., Mrs. Lamont received a call to
notify her that BDF's delivery truck would be arriving closer to

3

1:30 p.m. than 1:50 p.m.  Mrs. Lamont returned home by 1:30
p.m., but the delivery truck never arrived.  Mrs. Lamont called
BDF, and BDF informed her that the delivery had been cancelled.

On January 9, BDF delivered part of the second bunk bed.
However, the second bunk bed was missing a trundle.  As of
January 23, BDF had still not delivered the trundle.

Before each delivery, BDF called the Lamonts on their
respective cellular telephones with automated messages regarding
the delivery.  The Lamonts received at least four automated
calls prior to each delivery.  BDF also made at least one
additional automated call to the Lamonts after the January 9
delivery requesting that they take a survey.

### Discussion

In their two-count complaint, the Lamonts claim that BDF
violated both the TCPA and the CPA.  The court examines each
count in turn.

A. <u>Count I: Telephone Consumer Protection Act</u>

In Count I, the Lamonts claim that BDF violated the TCPA by
making automated calls to their cellular telephones without
their express permission.  BDF argues that it is entitled to
dismissal of the Lamonts' TCPA claim because they consented to
the calls by providing their phone numbers.

4

Under the TCPA,

[i]t shall be unlawful for any person within the
United States[] . . . to make any call (other than a
call made for emergency purposes or made with the
prior express consent of the called party) using any
automatic telephone dialing system or an artificial or
prerecorded voice[] . . . []to any telephone number
assigned to a . . . cellular telephone service[.]

47 U.S.C. § 227(b)(1).

In a TCPA claim, whether or not express consent is given is

not an element of the claim, but is instead "an affirmative

defense for which the defendant bears the burden of proof."

Himes v. Client Servs. Inc., ___ F. Supp. 2d, ___, ___, 2014 WL

24258, at *7 (D.N.H. Jan. 2, 2014) (internal quotation marks

omitted).  A defendant may rely on an affirmative defense when

moving to dismiss a claim where "(i) the facts establishing the

defense are definitively ascertainable from the complaint and

the other allowable sources of information, and (ii) those facts

suffice to establish the affirmative defense with certitude."

Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)

(internal quotation marks omitted).

Under the TCPA, Congress authorized a private right of

action to enforce the Act.  47 U.S.C. § 227(b)(3).

Additionally, Congress authorized the Federal Communications

Commission ("FCC") to prescribe the necessary regulations to

implement the TCPA.  47 U.S.C. § 227(b)(2).  With respect to

consent, the FCC issued a ruling that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991 (1992 Report and Order), 7 FCC Rcd. 8752, 8769, 1992 WL 690928, at **11 (Oct. 16, 1992); see also In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991 (2008 Report and Order), 23 FCC Rcd. 559, 564, 2008 WL 65485, at **3 (Jan. 4, 2008) (reiterating the same ruling).

In 2012, the FCC expanded the express consent requirement to require express written consent for telemarketing calls.  See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991 (2012 Report and Order), 27 FCC Rcd. 1830, 1831, 1837-38, 2012 WL 507959, at **1, **5-6, (Feb. 15, 2012).  In this ruling, the FCC did not expand the consent requirement for informational calls, noting that "bank account balance, credit card fraud alert, package delivery, and school closing information are types of information calls that we do not want to unnecessarily impede." Id. at 1838, 2012 WL 507959, at **6.  Accordingly, FCC "rules for these calls . . . continue to permit oral consent if made to wireless consumers." Id. at 1841, 2012 WL 507959, at **8.  In addition, "research or survey calls, . . . to the

extent that they do not contain telemarketing messages, . . .
[may be consented to orally] if made to wireless consumers."
Id.  As BDF's calls to the Lamonts consisted of informational
delivery calls, and the Lamonts do not allege that any survey
request they received constituted any form of telemarketing,
BDF's calls did not require the Lamonts' express written
consent.

    The court's ruling on Count I hinges on whether the act of
providing one's cellular phone number to a business during a
business transaction constitutes express consent to receive
automated calls from that business.  Most courts support the
proposition that it does.  See, e.g., Pinkard v. Wal-Mart
Stores, Inc., No. 3:12-cv-02902-CLS, 2012 WL 5511039, at *4-*6
(N.D. Ala. Nov. 9, 2012); Roberts v. PayPal, Inc., No. C 12-0622
PJH, 2013 WL 2384242, at *4 (N.D. Cal. May 30, 2013); Saunders
v. NCO Fin. Sys., Inc., 910 F. Supp. 2d 464, 467 (E.D.N.Y. Dec.
19, 2012) ("authorities are almost unanimous that voluntarily
furnishing a cellphone number to a vendor or other contractual
counterparty constitutes express consent"); see also Emanuel v.
L.A. Lakers, Inc., No. CV 12-9936-GW(SHx), 2013 WL 1719035, at
*3 (C.D. Cal. Apr. 18, 2013).

    The reasoning in this line of cases is persuasive.  By
giving her phone number to BDF when she bought merchandise, Mrs.

Lamont also gave BDF express consent to use an autodialer to contact her.  Thus, BDF is entitled to dismissal of Mrs. Lamont's claim under the TCPA.

However, Mr. Lamont's claim stands on a different footing. Whereas Mrs. Lamont gave BDF her number, the only allegation regarding Mr. Lamont's number is that Mrs. Lamont gave that number to BDF.  BDF argues that case law indicates that when a person gives out a spouse's telephone number, that act constitutes giving the spouse's express permission to be called by the entity to which the telephone number was given.  BDF cites Osorio v. State Farm Bank, F.S.B., 859 F. Supp. 2d 1326, 1330 (S.D. Fla. 2012), and Gutierrez v. Barclays Grp., No. 10cv1012 DMS (BGS), 2011 WL 579238 (S.D. Cal. Feb. 9, 2011), for this proposition.  However, Gutierrez is readily distinguishable from the present case, and not only has Osorio recently been reversed, see Osorio v. State Farm Bank, F.S.B., ___ F.3d ___, 2014 WL 1258023 (11th Cir. Mar. 28, 2014), but, even prior to its reversal, Osorio was of no assistance to BDF.

In Gutierrez, a husband listed his wife's cellular telephone number as his home number on a credit card application.  See 2011 WL 579238, at *1.  The court noted that, while being deposed, the husband admitted to asking his wife for her permission to list her number on credit card applications,

8

and his wife admitted to giving him permission.  Id. at *3.  The court therefore held that the husband had "common authority" over his spouse's cellular telephone that enabled him to give the credit card company "prior express consent" to use her number.  Id. at *3 (internal quotation marks omitted).  In Osorio, one partner in an unmarried couple gave the other partner's phone number to a bank.  859 F. Supp. 2d at 1327.  Noting that the couple lived together, raised their child together, subscribed together to the same phone company, and that the first partner had given out the second partner's number as her own three times, the court held that the first partner had common authority over the second partner's phone.  Id. at 1330.  The court therefore held that the first partner had given the bank express consent to call the second partner's number. Id. at 1326, 1330.  On appeal, the Eleventh Circuit reversed and held that, while in some instances a person may authorize another adult to give their consent to call their cellular telephone, "we cannot say that all coinhabitants possess such authority as a matter of law."  Osorio, ___ F.3d at ___, 2014 WL 1258023, at *9.  Because there was a factual dispute whether the first partner acted as the second partner's agent when she gave the bank his contact number, the court held that "[t]he issue must instead be submitted to a factfinder."  Id.

9

Gutierrez was decided at summary judgment and contained much more information about the couple in the case than has been revealed about the Lamonts.  Before being reversed on appeal, Osorio was also decided at summary judgment and similarly contained much more information about the relationship of the couple at issue than this court knows about the Lamonts.  Thus, even prior to reversal, Osorio did not support BDF's case.  On appeal, any argument that Osorio supported BDF's position eroded completely when the Eleventh Circuit determined that, even with the information available at summary judgment, the couple's relationship and living situation in the case did not automatically allow one member of the couple to give the other's prior express consent to call the other's cellular phone.

In the present case, the material facts alleged are as follows: (1) Mr. and Mrs. Lamont reside at the same address; (2) Mrs. Lamont gave Mr. Lamont's cellular phone number to BDF; (3) BDF autodialed Mr. Lamont's number.  At this stage, there is not enough information for the court to hold that Mr. Lamont consented to the calls.

With regard to Mr. Lamont's cellular phone, the Lamonts have stated a viable claim under the TCPA.  The portion of the TCPA claim dealing with Mrs. Lamont's cellular phone, however, is dismissed.

10

B. <u>Count II: New Hampshire Consumer Protection Act</u>

The court now turns to Count II.  In this count, the
Lamonts allege that BDF violated the CPA as follows:

    A).  Misrepresenting to the Plaintiffs that the
         merchandise would be delivered and assembled
         within a 3 hour delivery window.

    B).  Misrepresenting to the Plaintiffs that an end
         table, bookcase and bunk bed would be delivered
         and fully assembled on December 12, 2013.

    C).  Misrepresenting to the Plaintiffs that a bookcase
         would be delivered and fully assembled on
         December 12, 2013.

    D).  Misrepresenting to the Plaintiffs that there
         would be a delivery on January 2, 2014.

    E).  Misrepresenting to the Plaintiffs that a complete
         bunk bed would be delivered and fully assembled
         on January 9, 2014.

    F).  Selling plaintiffs a trundle section to a bunk
         bed but not delivering it.

Compl. (doc. no. 1) ¶ 19.

Under the CPA, "[i]t . . . [is] unlawful for any person to
use any unfair method of competition or any unfair or deceptive
act or practice in the conduct of any trade or commerce within
this state."  RSA 358-A:2.  BDF's alleged conduct does not fall
squarely within any of the enumerated categories of conduct
prohibited by the CPA.  "[I]n order for conduct not
particularized by the enumerated categories in the CPA to
qualify as an unfair or deceptive trade practice, that conduct

11

must be of the same type as proscribed by the enumerated categories." State v. Moran, 151 N.H. 450, 452 (2004) (emphasis removed).  To determine if a claim under the CPA outside of its enumerated categories is actionable, the court applies the "rascality test," which holds that the "objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."  Id. (internal quotation marks removed).  Additional guidance for determining whether a non-enumerated claim is actionable is found in the federal courts' review of the Federal Trade Commission Act.  Id. at 452-453 (citing RSA 358-A:13).  The Federal Trade Commission considers an act unfair or deceptive if it "is within at least the penumbra of some . . . established concept of unfairness[,]" is "immoral, unethical, oppressive, or unscrupulous[,]" or causes "substantial injury to consumers."  Id. at 453 (internal quotation marks omitted).

Assuming all the Lamonts' allegations against BDF are true, the conduct alleged does not rise to the level of a CPA violation.  BDF made four furniture deliveries, when, ideally, it should only have needed to make just one.  Again, assuming the allegations are true, BDF, at a minimum, inconvenienced the Lamonts by requiring multiple deliveries, by failing to assemble their furniture as promised, and by failing to provide a

12

component of one piece of their furniture.  However, such poor
customer service does not rise to the level of a CPA violation.
BDF's alleged conduct would not raise an eyebrow of someone
inured to the world of commerce, and it does not fall within
established concepts of unfairness or their penumbras.  Nor is
it immoral, unethical, oppressive, or unscrupulous.
Furthermore, none of BDF's alleged conduct amounts to
"substantial injury" to consumers.

    In sum, BDF did not misrepresent what it intended to do;
rather, the allegations are that BDF failed at doing what it had
promised.  While BDF's actions might constitute a breach of
contract, the New Hampshire Supreme Court is clear "that an
ordinary breach of contract claim does not violate the CPA."
Moran, 151 N.H. at 453 (citing Barrows v. Boles, 141 N.H. 382,
390 (1996)).  Accordingly, the Lamonts have failed to state a
claim for which relief can be granted under the CPA.  Count II
is therefore dismissed.

**Conclusion**

    For the reasons detailed above, BDF's motion to dismiss
(doc. no. 6) is granted in part and denied in part.  Count I is
dismissed with respect to Mrs. Lamont's claim under the TCPA;

13

Count II is dismissed in its entirety.  Thus, all that remains

in this case is Mr. Lamont's claim under the TCPA.

      SO ORDERED.

                              _____
                              Landya McCafferty
                              United States District Judge

April 15, 2014

cc:   Joseph L. Lamont, Esq.
      Brian G. Leary, Esq.
      Robert M. Shaw, Esq.
      Timothy John McLaughlin, Esq.